**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

Dr Beverley T Harris

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2018 JUN -6  P 12: 47

*(In the space above enter the full name(s) of the plaintiff(s).)*

- against -

The Bozzuto Group
- Thomas S. Bozzuto, Founder
- Toby Bozzuto, Operating Ofr
- Partners
- David Curcio, Regional Mgr
• The Park Apartment
➤ Michelle Demetriou
• Property Mgr - The Park Apartments

**COMPLAINT**

Jury Trial: ☑ Yes ☐ No

(check one)

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

**I.  Parties in this complaint:**

A.  List your name, address and telephone number. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff  Name             Dr Beverley Harris
           Street Address   610 Greenway Blvd (New Street)
           County, City     Roselle
           State & Zip Code NJ   07203
           Telephone Number (973) 876-0933

B. List all defendants. You should state the full name of the defendants, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant can be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1
Name THOMAS S. BOZZUTO (THE GROUP) (Bozzuto)
Street Address 6406 IVY LANE #700
County, City GREENBELT
State & Zip Code MD 20770

Defendant No. 2
Name TOBY BOZZUTO - THE BOZZUTO GROUP
Street Address — SAME AS ABOVE —
County, City
State & Zip Code

Defendant No. 3
Name PARTNERS (UNKNOWN) - THE BOZZUTO GROUP
Street Address — SAME AS ABOVE —
County, City
State & Zip Code

Defendant No. 4
Name DAVID CURCIO, REGIONAL MGR - THE BOZZUTO GROUP
Street Address — SAME AS ABOVE —
County, City
State & Zip Code

#5  MICHELLE DEMETRIOU - THE PARK APT
417 RARITAN ROAD
Roselle NJ 07203

II. **Basis for Jurisdiction:**

Federal courts are courts of limited jurisdiction. There are four types of cases that can be heard in federal court: 1) Federal Question - Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case; 2) Diversity of Citizenship - Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case; 3) U.S. Government Plaintiff; and 4) U.S. Government Defendant.

A. What is the basis for federal court jurisdiction? *(check all that apply)*
   [ ] Federal Questions       [✓] Diversity of Citizenship
   [ ] U.S. Government Plaintiff   [ ] U.S. Government Defendant

B. If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _____

- 2 -

C. If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship __NEW JERSEY__

Defendant(s) state(s) of citizenship __MARYLAND__

### III. Statement of Claim:

State as briefly as possible the facts of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A. Where did the events giving rise to your claim(s) occur? __(1) INVASION OF PRIVACY (CAMERA(S) illegally installed in Plaintiff's Apartment w/o knowledge and/or consent (2) NEGLIGENCE__

B. What date and approximate time did the events giving rise to your claim(s) occur? __8 MARCH 2018, when Plaintiff discovered the CAMERA(S) in A/C VENT.__

[What happened to you?]

C. Facts: __Plaintiff's landlord illegally installed camera(s) in Plaintiff's apartment. The camera(s) were pointed into the Plaintiff's bathroom and front door to apartment and bedroom.__
__(2) Negligence: Violation of Tenant's Rights per NJ common laws__

[Who did what?]

__Landlord Management installed the camera(s) then removed the camera(s) without getting permission from tenant to enter apartment.__

[Was anyone else involved?]

__??__

[Who else saw what happened?]

__No one else, but plaintiff has proof of what occurred.__

- 3 -

## IV. Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. Invasion of Privacy - Embarrassment, physical distress, Shock, humiliation, fear, Emotional stress and fear, intimidation that the images from the camera(s) might end up online, public media or others.

(2) Negligence - hostility from Landlord and staff, physical and Emotional distress, harassment and fear

## V. Relief:

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation.

- Punitive damages, tort damages, Cost for suit, prejudgement interest and any other relief this Court may deem just and appropriate. Possibly $6 million ($6,000,000)

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ___6___ day of ___June_____, 20_18_.

Signature of Plaintiff _____

Mailing Address   610 Greenway Blvd
Roselle
NJ  07203

Telephone Number  (973) 876-0933

Fax Number *(if you have one)* _____

E-mail Address   SIRRAHBM@gmail.com

Note: All plaintiffs named in the caption of the complaint must date and sign the complaint.

Signature of Plaintiff: _____

THE UNITED STATES DISTRICT COURT OF NEW JERSEY                June 6, 2018

| | |
|---|---|
| Dr. Beverley M. Harris <br><br> Plaintiff <br><br> v. <br><br> Mr. Thomas S. Bozzuto, Founder of the Bozzuto Group <br> Mr. Toby Bozzuto, Operatng Officer, Bozzuto Group <br> Partners of the Bozzuto Group <br> Mr. David Curcio, Regional Manager, The Park Apartments <br> Ms. Michelle Demetriou, Manager The Park Apartments <br> Roselle New Jersey <br><br> Defendants | **JURY TRIAL** <br><br> Pauperis Filing |

## COMPLAINT

Plaintiff, Dr. Beverley M. Harris, representing herself, *per se*, brings legal actions against Defendants, Mr. Thomas S. Bozzuto and Partners, Mr. Toby Bozzuto, (known as the Bozzuto Group), Mr. David Curcio, Ms. Michelle Demetriou, alleging and affirming the following:

### PARTIES, JURISDICTION

#### The Bozzuto Group

- "Established in 1988
- Our portfolio is valued $15 billion
- We are the first, and currently only, third-party multifamily management company to be awarded ENERGY STAR® Partner of the Year
- Our operations teams are active throughout the Northeast, Mid-Atlantic, Midwest and Southern regions
- We manage more than 240 communities and over 2.2 million square feet of retail to date
- Approximately 85% of our portfolio consists of third party owners, ranging from national investment groups to regional private developers
- We are the 14th largest property management company in the nation*
- The National Association of Home Builders (NAHB) has named us Best Property Management Company three years in a row
- We have earned #1 Property Management Company for Online reputation by the ORA Power Rankings three years in a row"

**THE UNITED STATES DISTRICT COURT OF NEW JERSEY**     June 6, 2018

## Jurisdiction

1. Original jurisdiction is further conferred upon this Court pursuant to 28 U.S.C. § 1331, based upon the federal question contained herein, the Court would have supplemental jurisdiction to hear the remaining state law claims.
2. Plaintiff, Dr. Beverley Harris, *per se*, resides in an apartment at The Park Bozzuto Apartments in Roselle, New Jersey, own and operated by Defendants, The Bozzuto Group
3. Defendants', the Bozzuto Group (known as Corporation), is a Maryland Corporation with its main place of business listed as 6406 Ivy Lane #700 Greenbelt, Maryland 20770
4. Given that Defendants Corporation, also owns and operates various apartments complexes in various states including the State of New Jersey being a substantial operation, pursuant to 28 U.S.C. § 1391 venue is proper in this Court.
5. Defendants Corporation owns and operates The Park Bozzuto Apartments (known as The Park), located at 417 Raritan Road, Roselle, Union County New Jersey 20703, where Plaintiff leases a 1-bedroom apartment.
6. Plaintiff, has been residing at The Park Bozzuto Apartment #610, (Actual address: 610 Greenway Blvd, apartment given separate address from The Park's Address by Defendants) since 11 September 2017 on a 13-month lease contract.
7. Pursuant to 28 U.S.C. § 1332, the original jurisdiction is conferred upon this Court, and based upon the location of the parties and the amount in controversy as set forth herein.
8. Defendant, The Bozzuto Goup, at all relevant times regularly conduct business here in New Jersey, thereby subjecting itself to the personal jurisdiction of this Court.
9. The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of a territorial state of the United States, thereby establishing original jurisdiction pursuant to 28 U.S.C. § 1332.
10. Accordingly, pursuant to 28 U.S.C. § 1332, Defendant, The Bozzuto Group is, for purposes of Federal jurisdiction, a citizen of Maryland.
11. Defendants', Property Manager, Michelle Demetriou and other operating staff at The Park Bozzuto, Roselle, Plaintiff upon information and belief, are believed to be residents of the State of New Jersey and therefore subjecting them to the jurisdiction of this Court.

**THE UNITED STATES DISTRICT COURT OF NEW JERSEY**　　　　　　June 6, 2018

## FACTUAL ALLEGATIONS

12. The Park Apartments (hereinafter referred to as "The Park") held and continues to hold itself out to the public as "establishes a new level of living and residential enclave in Roselle, NJ and a "community that gives you everything – a place to socialize, entertain, exercise, relax, and thrive"

13. Essentially, The Parks Apartment has a variation of different size and priced "luxury" apartments for rent to the public in and around the State of New Jersey.

14. In doing so, The Park Apartment:
    a) advertises in various media and provides listings of places for rent;
    b) creates a platform whereby interest leases may view properties by showcasing the property online, and in person thereby soliciting for prospective tenants;
    c) creates a sense of trust, safety and care to the prospective tenants
    d) and should address any problems that arise with respect to the rental of the properties.

15. New Jersey requires that "Key components of property management (renting, leasing and collecting rent) are considered real estate activities under existing New Jersey real estate licensing laws. If a property manager is going to rent, list, collect rents, procure prospects or negotiate, assist, or offer to perform any of those acts, he or she will need a broker's license. A salesperson working under a broker may engage in such activities" Plaintiff does not know if this is true of The Park's property manager.

16. As a general proposition and at all relevant times in the instant matter, The Park:
    d) Although provided Plaintiff with a 95-page lease document, The Park fails/failed to put into place policies and procedures to protect the constitutionally protected rights of privacy and seclusion of the Plaintiff as a tenant.

17. This became obvious to Plaintiff even before being "accepted" as a tenant. Defendant leasing agent, Ms. Rodriquez, on several occasions refused to provide Plaintiff the opportunity to view the apartment that she was to occupy, but instead made continuous excuses. In fact, Plaintiff never saw the apartment until the day she was assigned to move into the apartment.

18. On the move-in day, the leasing agent, Natalie Rodriquez, was professional rude, displayed demeaning attitude toward Plaintiff when Plaintiff arrived to complete the necessary financial and renting document. Plaintiff had to wait for more than 2 hours before even seeing the

**THE UNITED STATES DISTRICT COURT OF NEW JERSEY**         **June 6, 2018**

expected apartment.

19. During the move-in inspection Defendant leasing agent, spent approximately 15 minutes independently, looking over few items in the kitchen, bathroom, and walk-in closet. Then demanded that Plaintiff sign the move-in document.

20. Plaintiff reluctantly signed the document knowing that according to NJ Rental Code Plaintiff would have ample to perform her own move-in inspection within a reasonable period of time (30 days).

21. However, Defendant's leasing agent informed Plaintiff that "you will get a copy when you move out". Plaintiff, being a new tenant did not argue the point but waited for approximately 10 days and sent an email to the Property Manager requesting a copy of that move-in inspection report.

22. To Plaintiff' surprise, the Defendant's leasing agent had "checked-off" every item on the list claiming that all items in the apartment has been in good condition even though:
    a) Some of the areas (walls, floor, windows, carpet, countertops, washer/dryer enclosure, etc.) were never even inspected by any one of us on the day in question (11 September 2017)
    b). The inspection was not a "mutually inspection process" in according with the New Jersey Rental Codes. Furthermore, items that were listed by Plaintiff and sent to Defendants' Manager and maintenance staff has never been completed, to date.

23. The disrespectfully treatment by Defendants' staff at The Park continued on a regular basis and getting maintenance services seemed impossible at times.

24. On one occasion, Plaintiff (Plaintiff was an Aerospace Engineering, in Mechanical Engineering, and System Engineering disciplines at the NASA Kennedy Space Center) was concerned for her safety when she noticed an unusual lifted base-plate on the inside of the oven, knowing that it deadly fumes, if not properly secured, can become life-threatening. Plaintiff reported the problem to the Property manager at least 3 times, in person with photos, and in emails. Instead of sending a maintenance staff to check the problem, the Property Manager send Plaintiff an email stating that "you are liable for the damage"

25. In December 2017 I had spoken with Ms. Rodriquez about the continued re-positioning of a construction cone in front of my car in the parking area of Building 6 and my fear that this

**THE UNITED STATES DISTRICT COURT OF NEW JERSEY**                    June 6, 2018

cone could cause damages to my new car as I had seen the cone stuck under the front end of the car during a windy day.

26. I had moved the cone several times but it would somehow re-appear. Then on Thursday 12/21/17 I removed the cone and placed it to the side of the back door entrance to Building 6. At approximately 10:40 PM that night there was no cone in front of my car. However, the next morning when I looked out the window (approximately 7:00AM) the cone was again in front of my car.

27. The next day as I was about to get into my car I noticed some foot prints, circling around my car and some of the footprints showed that someone had approached the driver's- door of the car. I took the cone to the property maintenance staff garage, spoke to Ms. Rodriquez and informed her that the maintenance person, Mr. Parker evidence by the shoe-print, had been walking around my car sometime between 10:40 PM to 7:00 AM. Her response was (1) "there was nothing on the camera" (meaning the outside building camera that was pointed directly at my car).

28. However, Mr. Parker admitted, in the presence of Ms. Rodriquez, to being by my car replacing the construction cone in front of the car and walked around my car as I was able to match the shoe-print on the ground around my car to the shoe he was wearing. Ms. Rodriquez continued to be confrontational, and nasty in her comments to me, and then told me to "go to the police" something the Property Manager, Ms. Demetriou, reiterated in an email to me later that day.

29. When I went to The Park and completed documentation for leasing the apartment, I had completed and signed a "credit check" (only) giving the Park the right to check my public credit file, not my background file.

30. To my surprised Ms. Demetriou informed me, sometime in February, if I recall, that she had completed a "background check" on me. That of course was done without my knowledge and permission, which by law is an illegal action on Defendant's part because it is a mandatory requirement to have my permission before doing so. The Fear Credit Reporting Act (FCRA) requires that renter give landlords that ability to check the "credit report" by completing the required form(s) which I did. However, I did not know of any laws that give anyone the right to

THE UNITED STATES DISTRICT COURT OF NEW JERSEY                    June 6, 2018

perform a background check on me without my knowledge and consent. I was not against consenting to a background check. What I am against is your staff illegally performing a background check without my consent and when I kindly requested a copy Defendant, Ms. Demetriou, told me to get it from the agency that performed the background check, this information without my consent.

### The Camera in my Apartment

31. Sometime in December 2017, Plaintiff recall hearing this unusual and unrecognized low sound that seem like it was coming from the area where the washer/dryer is located. Then over a period of time Plaintiff became more curious but still could not pin-point the exact location.

32. Being concerned for her safety and did not want to be exposed to more hostility from the Park Management, Plaintiff, abandoned her bed for the coach in the living room.

33. Then on 8 March 2018 as Plaintiff was walking from the bathroom to the bedroom, she finally heard the sound coming from above the door to the bedroom. There is an air condition vent located at that location.

34. Plaintiff decided to check the cause of this sound before reporting it to the Parks. Plaintiff, turned off the circuits that she believed were in the area of the sound to avoid unseen problems. Then Plaintiff looked into through the vent and was completely shocked to come "face-to-face" with a camera. Plaintiff continued to look into that area and believe that there were 2 cameras in that very same space along with many other wiring and equipment.

35. The camera that Plaintiff saw was capable of capturing the full spectrum of the bathroom, front door entry and another possibly with the bedroom within its view. Plaintiff was so devastated that she felt to the floor and began crying for more than 3 hours, knowing that people were look at her in the nude every time she stepped out of the shower. Plaintiff knew that the photos from the cameras were being shown around based on what occurred when the 2 Parks maintenance male staff came to my apartment on 9 February 2018.

36. The 2 males Parks maintenance, Robert and Parker finally came to check the problem with the oven that Plaintiff had reported to the Property Manager on 9 February 2018. While Robert was checking the oven Parker kept staring, over and over, at Plaintiff's left breast for quite a while. She tried to ignore him and just walked away. But when Plaintiff saw the cameras on 8

DR. BEVERLEY HARRIS                                                                                      6

**THE UNITED STATES DISTRICT COURT OF NEW JERSEY**       June 6, 2018

March 2018, she realized that Parker has seen her in the cameras when she got out of the shower and knew that her left breast was much smaller than the right, something he would not have known had he not seen her without my clothes on in the camera photos.

37. In August 2005, Plaintiff had discovered that she had the early stage of breast cancer. In September 2005 she had surgery on her breast at which time a small bit of her breast was removed leaving the left breast smaller than the right. Instead of opting to have breast implant, Plaintiff decided and still uses pads in her brassieres to compensate for the smaller breast.

38. Plaintiff is so sensitive about her breast that she never even showed it to her Mom. So, you can clearly understand the embarrassment she is suffering knowing that her privacy has been inexcusably violated.

39. The operator, manager, and/or entity in full or joint control of the leasing/renting process of the property, owed a duty to Plaintiff, Dr. Beverley Harris, to exercise reasonable care under the circumstances to avoid causing personal injury. This did not happen.

40. At no time did the Park or the other Defendants inform Plaintiff that a video camera was located in the air condition vent of the property or that it was being controlled from a remote location in order to observe and listen to Plaintiff.

41. Further, Plaintiff was able to ascertain that the camera had a significant view angle to covered the entrance to the front door of her apartment.

42. Moreover, she believes that the camera was the type of camera capable of recording audio, i.e. audible sounds, and capturing video-graphic imagery at night and was remotely controlled.

43. Further, certain events demonstrate that the oral communications by and with Plaintiff within the property were intercepted by the Manager via the use of the camera.

44. Plaintiff immediately complained to The Parks Property Manager and Regional Director, Mr. Curcio in written the next day, 9 March 201847. Plaintiff is deeply humiliated and angry about the fact that the camera was and/or could have been used to spy upon her while she was completely undressed and walking around within her apartment. Moreover, she has been and continues to be concerned that images of her exist in electronic form and could make their way onto the Internet or some other medium.

45. Plaintiff is also embarrassed and angry that her personal and intimate conversations were and/or could have been spied upon by the operator of the cameras.

**THE UNITED STATES DISTRICT COURT OF NEW JERSEY**         June 6, 2018

46. Plaintiff remains very much concerned to this day about her level of privacy when staying in which should be her own, and this concern has negatively impacted her level of enjoyment in any apartment.

47. Since 8 March 2018, Plaintiff have not used the mirror in the bathroom that was facing the camera will only take showers in the dark. She has also covered all vents and openings in the apartment.

48. Soon after Plaintiff notified the Property Manager of the discovery of the camera(s) in my apartment, on 12 March 2018 and based on the Property Manager's statement to me, she apparently sent out notices, via emails, to all tenants notifying them that the Park maintenance staff was to perform maintenance to replace air condition filters during that week.

49. Miraculously, Plaintiff never receive that email until the day, 15 March 2018, when the Park Apartment's staff had already entered her apartment without knowledge and removed the cameras. While in the apartment these staff took time to deliberately and maliciously damage the grill on top of the stove, the stove-top, the kitchen sink, and the bathroom sink. Plaintiff, called the Roselle Police Department and reported the incident to "Officer #46" and later to the Property Manager in an email.

50. On or about 12 April 2018 Plaintiff received what she would considers a "bullying" letter from Defendant's attorney, Jennifer Alexander, of Randolph New Jersey, addressing everything that was not truthful and never mentioned anything about the illegal placement of the camera in her apartment.

51. To date, Defendants in Maryland and here in New Jersey have not responded the camera(s) in my apartment and the deliberate and malicious violation of my Privacy.

## CAUSE OF ACTION

### COUNT I

Under **New Jersey law**, **negligence** is defined as a party's failure to act as a reasonable person would, or failure to exercise the "degree of care for the safety of others" which a "person of ordinary prudence" would exercise under "similar circumstances."

The Bozzuto Group & The Parks Apartments:

52. Paragraphs 1 through 51 are realleged as though fully set forth herein.

**THE UNITED STATES DISTRICT COURT OF NEW JERSEY**  June 6, 2018

53. Defendants, The Bozzuto Group & The Park, created a business enterprise whereby they offer places for rent, solicit prospective tenants.

54. Defendants' business enterprise depends hiring qualified and dependable staff for the purpose of renting apartments.

55. This affirmative act by Defendants of bringing qualified leasing staff and lessees of apartments together through its Internet portal and other media has an obligation of ordinary care.

56. Plaintiff believes that in failing to engage in little, if any, supervision of their leasing and operational staff before allowing them to assume these most sensitive and demanding positions, Defendants The Bozzuto Group created and continues to create a foreseeable risk of harm to tenants such as this Plaintiff who rely upon Defendants' assertion that it has "establishes a new level of living and residential enclave in Roselle, NJ and a "community that gives you everything – a place to socialize, entertain, exercise, relax, and thrive"

57. Such failure created a foreseeable risk of harm from the Defendant's Management/Leasing Agents for this Plaintiff, and, in fact, Plaintiff was subjected to a hostile, intimidating, and humiliating environment then and now during her stay within the apartment from the moment she entered the apartment on 11 September 2017

## COUNT II

Common Law Negligence of The Bozzuto Group & The Park Apartments:

58. Paragraphs 1 through 53 are realleged as though fully set forth herein.

55. The Bozzuto Group/The Park breached its obligation of ordinary care for these delineated reasons.

59. As a direct and proximate result of Defendant's misfeasance, Plaintiff has suffered special damages to be proven at the time of trial.

60. As a direct and proximate result of Defendant's misfeasance, Plaintiff has suffered general damages, including, but not limited to, humiliation, shock, embarrassment, intimidation, physical distress and injury, fear, stress, and other damages to be proven at the time of trial.

61. Plaintiff, upon information and belief, alleges that Defendants committed the acts delineated herein maliciously and oppressively in conscious disregard for Plaintiff's rights. Accordingly, Plaintiff is entitled to recover punitive damages in an amount according to proof.

THE UNITED STATES DISTRICT COURT OF NEW JERSEY          June 6, 2018

WHEREFORE, Plaintiff, Dr. Beverley Harris, demands judgment be entered against Defendants for money damages, punitive damages, costs of suit, pre-judgment interest, and such other relief as this Court may deem just and appropriate.

## COUNT II

Under **New Jersey law**, **negligence** is defined as a party's failure to act as a reasonable person would, or failure to exercise the "degree of care for the safety of others" which a "person of ordinary prudence" would exercise under "similar circumstances."

The Bozzuto Group & The Parks Apartments:

62. Paragraphs 1 through 51 are realleged as though fully set forth herein.

663. Defendants, The Bozzuto Group & The Park, created a business enterprise whereby they offer places for rent, solicit prospective tenants.

64. Defendants' business enterprise depends hiring qualified and dependable staff for the purpose of renting apartments.

65. The Bozzuto Group, offered to lease, placed for rent, solicited prospective tenants and/or collected rent from tenants whereby falling within the definition of a real estate management within New Jersey Business and Professions Code.

66. Plaintiff does not know if the Park Management has the required Real estate license, but the action of the staff at the Park does not reflect the professionalism knowledge, care and protection needed from license individual.

67. Plaintiff falls within the class of people sought to be protected by these aforementioned professionals.

68. Such failure created a foreseeable risk of harm from the Defendants for this Plaintiff, and, in fact, Plaintiff was and still is subjected to a hostile, intimidating, and humiliating environment during her stay within the property.

69. Such unscrupulous conduct lies at the heart of protecting the public from "unlicensed?" individuals and/or companies carrying on activities that fall within the role of a "State Licensed" individuals.

70. As a direct and proximate result of Defendant's failure to adhere to exercise care and safety as requirements, Plaintiff has suffered special damages to be proven at the time of trial.

**THE UNITED STATES DISTRICT COURT OF NEW JERSEY**               **June 6, 2018**

71. As a direct and proximate result of Defendant's failure to adhere to state requirements, Plaintiff has suffered general damages, including, but not limited to, humiliation, shock, embarrassment, intimidation, physical distress and injury, fear, stress, and other damages to be proven at the time of trial.

72. Plaintiff, upon information and belief, alleges that The Bozzuto Group/The Park committed the acts delineated herein maliciously and oppressively in conscious disregard for Plaintiff's rights.

Accordingly, Plaintiff is entitled to recover punitive damages in an amount according to proof.
WHEREFORE, Plaintiff, Dr. Beverley Harris, demands judgment be entered against The Bozzuto Group. for money damages, punitive damages, costs of suit, pre-judgment interest, and such other relief as this Court may deem just and appropriate.

## COUNT III

Violation of 28 U.S.C. § 2511 & Invasion of Privacy by The Bozzuto Group/The Park:

73. Invasion of privacy. New Jersey recognizes all four common law invasion of privacy claims: intrusion upon solitude or seclusion, public disclosure of private facts (e.g., unreasonable publicity given to one's private life), false light privacy (e.g., publicity that normally places the other in a false light before the public), and appropriation of one's name or likeness (*Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689 (App. Div. 1982)).

The Bozzuto Group & The Parks Apartments:

74. Paragraphs 1 through 51 are realleged as though fully set forth herein.

75. A privacy violation based on the common law tort of intrusion has two elements. *First*, the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy. *Second*, the intrusion must occur in a manner highly offensive to a reasonable person.

76 Defendants illegally and deliberately and "intentionally" installed camera(s) in Plaintiff's apartment, (either before she occupied the apartment of during her absence while she occupied the apartment) without her knowledge and or permission and resulting in capturing private conversation and images.

THE UNITED STATES DISTRICT COURT OF NEW JERSEY          June 6, 2018

77. This intrusion was "highly offensive, embarrassing, and humiliating, and fearful to the Plaintiff.

778. Plaintiff expected to have complete and exclusive and reasonable expectation of privacy but she was denied in the final analysis.

79. "'[E]lectronic communication' means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce, but does not include—(A) the radio portion of a cordless telephone communication that is transmitted between the cordless handset and the base unit; (B) any wire or oral communication; (C) any communication made through a tone-only paging device; or (D) any communication from a tracking device (as defined in section 3117 of this title)," 18 U.S.C. 2510(12).

80. Plaintiff knows for sure that images of her nude body was transfer through the camera(s) to remote site(s) to unwarranted observers; creating emotional distress, intimidation stress, fear, and embarrassment, but most important, is that these images may someday displayed on the Internet or other social media.

81. Plaintiff had a reasonable expectation of privacy while she in her apartment as a tenant at the Park.

WHEREFORE, Plaintiff, Dr. Beverley Harris, demands judgment be entered against The Bozzuto Group. for money damages, punitive damages, costs of suit, pre-judgment interest, and such other relief as this Court may deem just and appropriate.

## COUNT IV

Violation of 28 U.S.C. § 2511 & Invasion of Privacy by The Bozzuto Group/The Park:

82. Invasion of privacy. New Jersey recognizes all four common law invasion of privacy claims: intrusion upon solitude or seclusion, public disclosure of private facts (e.g., unreasonable publicity given to one's private life), false light privacy (e.g., publicity that normally places the other in a false light before the public), and appropriation of one's name or likeness (*Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689 (App. Div. 1982)).

The Bozzuto Group & The Parks Apartments:

83. Paragraphs 1 through 51 are realleged as though fully set forth herein:

**THE UNITED STATES DISTRICT COURT OF NEW JERSEY**          June 6, 2018

84. Defendants illegally and deliberately and "intentionally" conducted background check on Plaintiff without her knowledge and permission.

85. Defendant at no time during the more than 2 months of contact with Plaintiff regarding renting the apartment, mentioned anything about requiring a background check in order be accepted as a tenant.

86. Plaintiff learned about the background, accidently, when she approached the Property Manager about possibly having her keys changed.

87. Plaintiff was completely shock about this privacy violation and kindly requested a copy of the background check, but Defendant denied the request stating that Plaintiff should obtain such information from the Agency that had completed the check on behalf of Defendant.

88. This intrusion was "highly offensive, emotional for Plaintiff.

WHEREFORE, Plaintiff, Dr. Beverley Harris, demands judgment be entered against The Bozzuto Group. for money damages, punitive damages, costs of suit, pre-judgment interest, and such other relief as this Court may deem just and appropriate.


DATED:  6 June 2018                     Respectfully,

                                        By: _____
                                        Dr. Beverley M. Harris
                                        610 Greenway Blvd
                                        Roselle, NJ 07203
                                        Phone: (973) 876-0933