THE UNITED STATES DISTRICT COURT OF NEW JERSEY          June 18, 2018

## AMENDMENT TO ORIGINAL COMPLAINT

| | |
|---|---|
| Dr. Beverley M. Harris ) | CASE NO. 2:18-CV-10277- |
| Plaintiff ) | JUDGES: MCA-SCM |
| v. ) | |
| Mr. Thomas S. Bozzuto, Founder of the Bozzuto Group, ) 6406 Ivy Lane #700 Greenbelt, Maryland 20770, ) | |
| Mr. Toby Bozzuto, Operatng Officer, Bozzuto Group, & ) 6406 Ivy Lane #700 Greenbelt, Maryland 20770 ) Partners of the Bozzuto Group, 6406 Ivy Lane #700 ) Greenbelt, Maryland 20770, ) | |
| Mr. David Curcio, Regional Manager, 6406 Ivy Lane #700 ) Greenbelt, Maryland 20770 ) | |
| Ms. Michelle Demetriou, Manager The Park Apartments, ) 417 Raritan Road, Roselle New Jersey ) | **JURY RIAL** Pauperis file |
| U.S. ATTORNEY GENERAL, Jeffery Sessions, in ) his individual and official capacities, US Department ) of Justice, 950 Pennsylvania Avenue, NW, ) Washington DC 20530, ) | |
| DIRECTOR, Christopher A. Wray FEDERAL BUREAU ) Of INVESTIGATION, J. Edgar Hoover Building, 935 ) Pennsylvania Avenue, NW, Washington, DC 20535, ) | |
| AN UNKNOWN NUMBER OF UNKNOWN AGENTS ) OF FEDERAL BUREAU OF INVESTIGATION, 611 ) Greenway Blvd, The Park Apartment, Roselle, New Jersey ) 07203, ) | |
| AN UNKNOWN NUMBER OF UNKNOWN AGENTS ) OF FEDERAL BUREAU OF INVESTIGATION, 11 ) Centre Pl, Newark, NJ 07102 ) | |
| AN UNKNOWN NUMBER OF UNKNOWN AGENTS ) OF FEDERAL BUREAU OF INVESTIGATION, addresses) Unknown ) ) | |
| Defendants | |

DR. BEVERLEY HARRIS                                                                                      Page 1

THE UNITED STATES DISTRICT COURT OF NEW JERSEY    June 18, 2018

_____)

## AMENDED COMPLAINT

1. Plaintiff, Dr. Beverley M. Harris, a Retired US Air Force Disabled Veteran and a Retired US Government (US Army) Civil Services Employee, representing herself, *pro se*, brings legal actions against Defendants, Mr. Thomas S. Bozzuto and Partners, Mr. Toby Bozzuto, (known as the Bozzuto Group), Mr. David Curcio, Ms. Michelle Demetriou, US Attorney General Jeffery Sessions, Department of Justice (DOJ), and Director Christopher A. Wray, Federal Bureau of Investigation (FBI), and other FBI Agents listed above, alleging and affirming the following:

2. The Bozzuto Group

a.    Negligence

b.    Invasion of Plaintiff's privacy

c.    Defamation

**The FBI – Amendment to original Complaint**

a)    Tampering with Government Official Document

b)    Violation of First Amendment Rights

c)    Abuse of Power

d)    Retaliation

## PARTIES, JURISDICTION

1. The Bozzuto Group

a)    "Established in 1988

b)    Company's portfolio is valued $15 billion

c)    The first, and currently only, third-party multifamily management company to be awarded ENERGY STAR® Partner of the Year

d)    Company operations teams are active throughout the Northeast, Mid-Atlantic, Midwest and Southern regions

e)    Manage more than 240 communities and over 2.2 million square feet of retail to date

f)    Approximately 85% of our portfolio consists of third party owners, ranging from national investment groups to regional private developers

g)    The 14th largest property management company in the nation

**THE UNITED STATES DISTRICT COURT OF NEW JERSEY**                    **June 18, 2018**

## Jurisdiction

3. Original jurisdiction is further conferred upon this Court pursuant to 28 U.S.C. § 1331, based upon the federal question contained herein, the Court would have supplemental jurisdiction to hear the remaining state law claims.

4. Plaintiff, Dr. Beverley Harris, *per se*, resides in an apartment at The Park Bozzuto Apartments in Roselle, New Jersey, own and operated by Defendants, The Bozzuto Group

5. Defendants', the Bozzuto Group (known as Corporation), is a Maryland Corporation with its main place of business listed as 6406 Ivy Lane #700 Greenbelt, Maryland 20770

6. Given that Defendants Corporation, also owns and operates various apartments complexes in various states including the State of New Jersey being a substantial operation, pursuant to 28 U.S.C. § 1391 venue is proper in this Court.

7. Defendants Corporation owns and operates The Park Bozzuto Apartments (known as The Park), located at 417 Raritan Road, Roselle, Union County New Jersey 20703, where Plaintiff leases a 1-bedroom apartment.

8. Plaintiff, has been residing at The Park Bozzuto Apartment #610, (Actual address: 610 Greenway Blvd, apartment given separate address from The Park's Address by Defendants) since 11 September 2017 on a 13-month lease contract.

9. Pursuant to 28 U.S.C. § 1332, the original jurisdiction is conferred upon this Court, and based upon the location of the parties and the amount in controversy as set forth herein.

10. Defendant, The Bozzuto Goup, at all relevant times regularly conduct business here in New Jersey, thereby subjecting itself to the personal jurisdiction of this Court.

11. The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of a territorial state of the United States, thereby establishing original jurisdiction pursuant to 28 U.S.C. § 1332.

12. Accordingly, pursuant to 28 U.S.C. § 1332, Defendant, The Bozzuto Group is, for purposes of Federal jurisdiction, a citizen of Maryland.

13. Defendants', Property Manager, Michelle Demetriou and other operating staff at The Park Bozzuto, Roselle, Plaintiff upon information and belief, are believed to be residents of the State of New Jersey and therefore subjecting them to the jurisdiction of this Court.

**THE UNITED STATES DISTRICT COURT OF NEW JERSEY**　　　　　　**June 18, 2018**

14. Defendants, the primary, the DOJ/FBI, a Federal Agency, main offices in Washington DC with field offices nationwide throughout the US a substantial operation, pursuant to 28 U.S.C. § 1391 venue is proper in this Court.
15. Defendant, DOJ/FBI, at all relevant times regularly conduct business in here in New York, New Jersey and nationwide, thereby subjecting itself to the personal jurisdiction of this Court

## FACTUAL ALLEGATIONS

16. The Park Apartments (hereinafter referred to as "The Park") held and continues to hold itself out to the public as "establishes a new level of living and residential enclave in Roselle, NJ and a "community that gives you everything – a place to socialize, entertain, exercise, relax, and thrive"
17. Essentially, The Parks Apartment has a variation of different size and priced "luxury" apartments for rent to the public in and around the State of New Jersey.
18. In doing so, The Park Apartment:
    a) advertises in various media and provides listings of places for rent;
    b) creates a platform whereby interest leases may view properties by showcasing the property online, and in person thereby soliciting for prospective tenants;
    c) creates a sense of trust, safety and care to the prospective tenants
    d) and should address any problems that arise with respect to the rental of the properties.
19. New Jersey requires that "Key components of property management (renting, leasing and collecting rent) are considered real estate activities under existing New Jersey real estate licensing laws. If a property manager is going to rent, list, collect rents, procure prospects or negotiate, assist, or offer to perform any of those acts, he or she will need a broker's license. A salesperson working under a broker may engage in such activities" Plaintiff does not know if this is true of The Park's property manager.
20. As a general proposition and at all relevant times in the instant matter, The Park:
    d) Although provided Plaintiff with a 95-page lease document, The Park fails/failed to put into place policies and procedures to protect the constitutionally protected rights of privacy and seclusion of the Plaintiff as a tenant.

**THE UNITED STATES DISTRICT COURT OF NEW JERSEY**            **June 18, 2018**

21. This became obvious to Plaintiff even before being "accepted" as a tenant. Defendant leasing agent, Ms. Rodriquez, on several occasions refused to provide Plaintiff the opportunity to view the apartment that she was to occupy, but instead made continuous excuses. In fact, Plaintiff never saw the apartment until the day she was assigned to move into the apartment.

22. On the move-in day, the leasing agent, Natalie Rodriquez, was professional rude, displayed demeaning attitude toward Plaintiff when Plaintiff arrived to complete the necessary financial and renting document. Plaintiff had to wait for more than 2 hours before even seeing the expected apartment.

23. During the move-in inspection Defendant leasing agent, spent approximately 15 minutes independently, looking over few items in the kitchen, bathroom, and walk-in closet. Then demanded that Plaintiff sign the move-in document.

24. Plaintiff reluctantly signed the document knowing that according to NJ Rental Code Plaintiff would have ample to perform her own move-in inspection within a reasonable period of time (30 days).

25. However, Defendant's leasing agent informed Plaintiff that "you will get a copy when you move out". Plaintiff, being a new tenant did not argue the point but waited for approximately 10 days and sent an email to the Property Manager requesting a copy of that move-in inspection report.

26. To Plaintiff surprise, the Defendant's leasing agent had "checked-off" every item on the list claiming that all items in the apartment has been in good condition even though:
    a) Some of the areas (walls, floor, windows, carpet, countertops, washer/dryer enclosure, etc.) were never even inspected by any one of us on the day in question (11 September 2017)
    b). The inspection was not a "mutually inspection process" in according with the New Jersey Rental Codes. Furthermore, items that were listed by Plaintiff and sent to Defendants' Manager and maintenance staff has never been completed, to date.

27. The disrespectfully treatment by Defendants' staff at The Park continued on a regular basis and getting maintenance services seemed impossible at times.

28. On one occasion, Plaintiff (Plaintiff was an Aerospace Engineering, in Mechanical Engineering, and System Engineering disciplines at the NASA Kennedy Space Center) was concerned for her safety when she noticed an unusual lifted base-plate on the inside of the

oven, knowing that it deadly fumes, if not properly secured, can become life-threatening. Plaintiff reported the problem to the Property manager at least 3 times, in person with photos, and in emails. Instead of sending a maintenance staff to check the problem, the Property Manager send Plaintiff an email stating that "you are liable for the damage"

29. In December 2017 I had spoken with Ms. Rodriquez about the continued re-positioning of a construction cone in front of my car in the parking area of Building 6 and my fear that this cone could cause damages to my new car as I had seen the cone stuck under the front end of the car during a windy day.

30. I had moved the cone several times but it would somehow re-appear. Then on Thursday 12/21/17 I removed the cone and placed it to the side of the back door entrance to Building 6. At approximately 10:40 PM that night there was no cone in front of my car. However, the next morning when I looked out the window (approximately 7:00AM) the cone was again in front of my car.

31. The next day as I was about to get into my car I noticed some foot prints, circling around my car and some of the footprints showed that someone had approached the driver's- door of the car. I took the cone to the property maintenance staff garage, spoke to Ms. Rodriquez and informed her that the maintenance person, Mr. Parker evidence by the shoe-print, had been walking around my car sometime between 10:40 PM to 7:00 AM. Her response was (1) "there was nothing on the camera" (meaning the outside building camera that was pointed directly at my car).

32. However, Mr. Parker admitted, in the presence of Ms. Rodriquez, to being by my car replacing the construction cone in front of the car and walked around my car as I was able to match the shoe-print on the ground around my car to the shoe he was wearing. Ms. Rodriquez continued to be confrontational, and nasty in her comments to me, and then told me to "go to the police" something the Property Manager, Ms. Demetriou, reiterated in an email to me later that day.

33. When I went to The Park and completed documentation for leasing the apartment, I had completed and signed a "credit check" (only) giving the Park the right to check my public credit file, not my background file.

34. To my surprised Ms. Demetriou informed me, sometime in February, if I recall, that she had completed a "background check" on me. That of course was done without my knowledge and permission, which by law is an illegal action on Defendant's part because it is a mandatory requirement to have my permission before doing so. The Fear Credit Reporting Act (FCRA) requires that renter give landlords that ability to check the "credit report" by completing the required form(s) which I did. However, I did not know of any laws that give anyone the right to perform a background check on me without my knowledge and consent. I was not against consenting to a background check. What I am against is your staff illegally performing a background check without my consent and when I kindly requested a copy Defendant, Ms. Demetriou, told me to get it from the agency that performed the background check, this information without my consent.

## The Camera in Plaintiff's Apartment

35. Sometime in December 2017, Plaintiff recall hearing this unusual and unrecognized low sound that seem like it was coming from the area where the washer/dryer is located. Then over a period of time Plaintiff became more curious but still could not pin-point the exact location.
36. Being concerned for her safety and did not want to be exposed to more hostility from the Park Management, Plaintiff, abandoned her bed for the coach in the living room.
37. Then on 8 March 2018 as Plaintiff was walking from the bathroom to the bedroom, she finally heard the sound coming from above the door to the bedroom. There is an air condition vent located at that location.
38. Plaintiff decided to check the cause of this sound before reporting it to the Parks. Plaintiff, turned off the circuits that she believed were in the area of the sound to avoid unseen problems. Then Plaintiff looked into through the vent and was completely shocked to come "face-to-face" with a camera. Plaintiff continued to look into that area and believe that there were 2 cameras in that very same space along with many other wiring and equipment.

**THE UNITED STATES DISTRICT COURT OF NEW JERSEY**          **June 18, 2018**

39. The camera that Plaintiff saw was capable of capturing the full spectrum of the bathroom, front door entry and another possibly with the bedroom within its view. Plaintiff was so devastated that she felt to the floor and began crying for more than 3 hours, knowing that people were look at her in the nude every time she stepped out of the shower. Plaintiff knew that the photos from the cameras were being shown around based on what occurred when the 2 Parks maintenance male staff came to my apartment on 9 February 2018.

40. The 2 males Parks maintenance, Robert and Parker finally came to check the problem with the oven that Plaintiff had reported to the Property Manager on 9 February 2018. While Robert was checking the oven Parker kept staring, over and over, at Plaintiff's left breast for quite a while. She tried to ignore him and just walked away. But when Plaintiff saw the cameras on 8 March 2018, she realized that Parker has seen her in the cameras when she got out of the shower and knew that her left breast was much smaller than the right, something he would not have known had he not seen her without my clothes on in the camera photos.

41. In August 2005, Plaintiff had discovered that she had the early stage of breast cancer. In September 2005 she had surgery on her breast at which time a small bit of her breast was removed leaving the left breast smaller than the right. Instead of opting to have breast implant, Plaintiff decided and still uses pads in her brassieres to compensate for the smaller breast.

42. Plaintiff is so sensitive about her breast that she never even showed it to her Mom. So, you can clearly understand the embarrassment she is suffering knowing that her privacy has been inexcusably violated.

43. The operator, manager, and/or entity in full or joint control of the leasing/renting process of the property, owed a duty to Plaintiff, Dr. Beverley Harris, to exercise reasonable care under the circumstances to avoid causing personal injury. This did not happen.

44. At no time did the Park or the other Defendants inform Plaintiff that a video camera was located in the air condition vent of the property or that it was being controlled from a remote location in order to observe and listen to Plaintiff.

45. Further, Plaintiff was able to ascertain that the camera had a significant view angle to covered the entrance to the front door of her apartment.

46. Moreover, she believes that the camera was the type of camera capable of recording audio, i.e. audible sounds, and capturing video-graphic imagery at night and was remotely controlled.

**THE UNITED STATES DISTRICT COURT OF NEW JERSEY**          **June 18, 2018**

47. Further, certain events demonstrate that the oral communications by and with Plaintiff within the property were intercepted by the Manager via the use of the camera.

48. Plaintiff immediately complained to The Parks Property Manager and Regional Director, Mr. Curcio in written the next day, 9 March 201847. Plaintiff is deeply humiliated and angry about the fact that the camera was and/or could have been used to spy upon her while she was completely undressed and walking around within her apartment. Moreover, she has been and continues to be concerned that images of her exist in electronic form and could make their way onto the Internet or some other medium.

49. Plaintiff is also embarrassed and angry that her personal and intimate conversations were and/or could have been spied upon by the operator of the cameras.

50. Plaintiff remains very much concerned to this day about her level of privacy when staying in which should be her own, and this concern has negatively impacted her level of enjoyment in any apartment.

51. Since 8 March 2018, Plaintiff have not used the mirror in the bathroom that was facing the camera will only take showers in the dark. She has also covered all vents and openings in the apartment.

52. Soon after Plaintiff notified the Property Manager of the discovery of the camera(s) in my apartment, on 12 March 2018 and based on the Property Manager's statement to me, she apparently sent out notices, via emails, to all tenants notifying them that the Park maintenance staff was to perform maintenance to replace air condition filters during that week.

53. Miraculously, Plaintiff never receive that email until the day, 15 March 2018, when the Park Apartment's staff had already entered her apartment without knowledge and removed the cameras. While in the apartment these staff took time to deliberately and maliciously damage the grill on top of the stove, the stove-top, the kitchen sink, and the bathroom sink. Plaintiff, called the Roselle Police Department and reported the incident to "Officer #46" and later to the Property Manager in an email.

54. On or about 12 April 2018 Plaintiff received what she would considers a "bullying" letter from Defendant's attorney, Jennifer Alexander, of Randolph New Jersey, addressing everything that was not truthful and never mentioned anything about the illegal placement of the camera in her apartment.

55. <u>To date, Defendants in Maryland and here in New Jersey have not responded the camera(s) in my apartment and the deliberate and malicious violation of my Privacy.</u>

MENDED COMPLAINT- TO ADD FBI

56. On 5 June 2018 Plaintiff filed a complaint, against the Bozzuto Group and other Defendants for illegally installing camera(s) in Plaintiff apartment at the Park Apartment in Roselle, New Jersey.

57. The Plaintiff filed the complaint requesting the "pauperis" status since her total monthly retirement income is $2, 640, includes Social Security, Federal Govt. & Military combined, and Dept. Veteran Disability. Plaintiff was very careful in making sure the income reflects the correct amount due to the requirement of the "pauperis" program.

58. Then on 15 June Plaintiff received a letter from the Court denying her request for the "pauperis" status citing monthly income of "$28,236.00 income per month in retirement income in addition to $268.12 per month in disability income".

59. Plaintiff could not understand where those monetary amount came from because the **document she submitted with her complaint did not contain any of those amount**.

60. Then it became obvious and disturbing to her because she knew that the only person who would have known the exact of her disability payment is the FBI.

Plaintiff immediately recognized the FBI continued interference and control of all aspect of her life.

61. Plaintiff believes that the FBI tampered with her court file because:
   a) They have the motive and means to do so because they would like to see this case fail.
   b) The FBI apparently, has access to these files and in retaliation for Plaintiff filing the complaint, they decided to try and stop the case.
   c) The FBI who has, for more than 14 years, has full control of my life and knows that she would not be able to afford the $400 fee required.
   d) When Plaintiff filed her case with the Court she knew that the FBI was the primary person of this diabolical scheme to install the camera(s) in her apartment, but she had no proof to hold them responsible.
   e) Various Agents of the FBI moved into the apartment (#611) to Plaintiff's apartment (#610) approximately 1 week after Plaintiff rented the apartment in Roselle. Their main

purpose for being there is to monitor Plaintiff 24/7; something that has been going on for approximately than 14 years.

62. The Court needs to know why the FBI, for more than 14 years, has had full control of every aspect of Plaintiff's life. It's based on the following:

  a) On 17 February 2009 the FBI conspired with a Dr. Gossett in Houston Texas and Plaintiff's, then, employer and illegally implanted a FBI Tracking Device in her right leg without her knowledge, under the deceptive that claimed Plaintiff needed a colonoscopy in order to be hired

  b) Then on 24 June 2014, while Plaintiff was residing in Germany, The FBI once again plotted with a demonologist and illegally implanted a listening device in Plaintiff ear without her knowledge and/or consent; again during a dermatology procedure.

  c) It is important to note that Plaintiff has never committed (other than a parking ticket in a handicap parking) any crime and the FBI did not get any Court Approval to implant these devices in Plaintiff's body. These devices are still in Plaintiff's body and the FBI uses them to control her 24/7.

  d) The FBI's motive for violating Plaintiff's Constitutional Rights is because she would not spy on the US Army for them while she was Iraq.

63. After Plaintiff located the camera(s) in her apartment and watching the FBI and her landlord trampling all over her Constructional Rights, she wrote a letter (and enclosed some of evident) to Chief Judge Collen McMahon, at the US District Court for Southern New York, in Manhattan (**see Exhibit DCNY-1**). The Judge read the document then sent them back accompanied with the required documentation needed to file a lawsuit. Plaintiff file a lawsuit (Case No. 18-cv-5245) against the DOJ and FBI, doctors and former employer in the Court in Manhattan

60. So, it is understandable why the FBI do not want to see Plaintiff be successful with the case filed here in Newark New Jersey.

## CAUSE OF ACTION

### Bozzuto -COUNT I

Under **New Jersey law**, **negligence** is defined as a party's failure to act as a reasonable person would, or failure to exercise the "degree of care for the safety of others" which a "person of ordinary prudence" would exercise under "similar circumstances."

**THE UNITED STATES DISTRICT COURT OF NEW JERSEY**     **June 18, 2018**

The Bozzuto Group & The Parks Apartments:

64. Paragraphs 1 through 51 are realleged as though fully set forth herein.

65. Defendants, The Bozzuto Group & The Park, created a business enterprise whereby they offer places for rent, solicit prospective tenants.

66. Defendants' business enterprise depends hiring qualified and dependable staff for the purpose of renting apartments.

67. This affirmative act by Defendants of bringing qualified leasing staff and lessees of apartments together through its Internet portal and other media has an obligation of ordinary care.

68. Plaintiff believes that in failing to engage in little, if any, supervision of their leasing and operational staff before allowing them to assume these most sensitive and demanding positions, Defendants The Bozzuto Group created and continues to create a foreseeable risk of harm to tenants such as this Plaintiff who rely upon Defendants' assertion that it has "establishes a new level of living and residential enclave in Roselle, NJ and a "community that gives you everything – a place to socialize, entertain, exercise, relax, and thrive"

69. Such failure created a foreseeable risk of harm from the Defendant's Management/Leasing Agents for this Plaintiff, and, in fact, Plaintiff was subjected to a hostile, intimidating, and humiliating environment then and now during her stay within the apartment from the moment she entered the apartment on 11 September 2017

### Bozzuto - COUNT II

Common Law Negligence of The Bozzuto Group & The Park Apartments:

70. Paragraphs 1 through 53 are realleged as though fully set forth herein.

71. The Bozzuto Group/The Park breached its obligation of ordinary care for these delineated reasons.

72. As a direct and proximate result of Defendant's misfeasance, Plaintiff has suffered special damages to be proven at the time of trial.

73. As a direct and proximate result of Defendant's misfeasance, Plaintiff has suffered general damages, including, but not limited to, humiliation, shock, embarrassment, intimidation, physical distress and injury, fear, stress, and other damages to be proven at the time of trial.

74. Plaintiff, upon information and belief, alleges that Defendants committed the acts delineated herein maliciously and oppressively in conscious disregard for Plaintiff's rights.

Accordingly, Plaintiff is entitled to recover punitive damages in an amount according to proof.

WHEREFORE, Plaintiff, Dr. Beverley Harris, demands judgment be entered against Defendants for money damages, punitive damages, costs of suit, pre-judgment interest, and such other relief as this Court may deem just and appropriate.

### Bozzuto - COUNT III

Under **New Jersey law**, **negligence** is defined as a party's failure to act as a reasonable person would, or failure to exercise the "degree of care for the safety of others" which a "person of ordinary prudence" would exercise under "similar circumstances."

The Bozzuto Group & The Parks Apartments:

75. Paragraphs 1 through 51 are realleged as though fully set forth herein.

76. Defendants, The Bozzuto Group & The Park, created a business enterprise whereby they offer places for rent, solicit prospective tenants.

77. Defendants' business enterprise depends hiring qualified and dependable staff for the purpose of renting apartments.

78. The Bozzuto Group, offered to lease, placed for rent, solicited prospective tenants and/or collected rent from tenants whereby falling within the definition of a real estate management within New Jersey Business and Professions Code.

79. Plaintiff does not know if the Park Management has the required Real estate license, but the action of the staff at the Park does not reflect the professionalism knowledge, care and protection needed from license individual.

80. Plaintiff falls within the class of people sought to be protected by these aforementioned professionals.

81. Such failure created a foreseeable risk of harm from the Defendants for this Plaintiff, and, in fact, Plaintiff was and still is subjected to a hostile, intimidating, and humiliating environment during her stay within the property.

82. Such unscrupulous conduct lies at the heart of protecting the public from "unlicensed?" individuals and/or companies carrying on activities that fall within the role of a "State Licensed" individuals.

83. As a direct and proximate result of Defendant's failure to adhere to exercise care and safety as requirements, Plaintiff has suffered special damages to be proven at the time of trial.

84. As a direct and proximate result of Defendant's failure to adhere to state requirements, Plaintiff has suffered general damages, including, but not limited to, humiliation, shock, embarrassment, intimidation, physical distress and injury, fear, stress, and other damages to be proven at the time of trial.

85. Plaintiff, upon information and belief, alleges that The Bozzuto Group/The Park committed the acts delineated herein maliciously and oppressively in conscious disregard for Plaintiff's rights.

Accordingly, Plaintiff is entitled to recover punitive damages in an amount according to proof. WHEREFORE, Plaintiff, Dr. Beverley Harris, demands judgment be entered against The Bozzuto Group, for money damages, punitive damages, costs of suit, pre-judgment nterest, and such other relief as this Court may deem just and appropriate.

### Bozzuto - COUNT IV

Violation of 28 U.S.C. § 2511 & Invasion of Privacy by The Bozzuto Group/The Park:

86. Invasion of privacy. New Jersey recognizes all four common law invasion of privacy claims: intrusion upon solitude or seclusion, public disclosure of private facts (e.g., unreasonable publicity given to one's private life), false light privacy (e.g., publicity that normally places the other in a false light before the public), and appropriation of one's name or likeness (*Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689 (App. Div. 1982)).

The Bozzuto Group & The Parks Apartments:

87. Paragraphs 1 through 51 are realleged as though fully set forth herein.

88. A privacy violation based on the common law tort of intrusion has two elements. *First*, the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy. *Second*, the intrusion must occur in a manner highly offensive to a reasonable person.

89 Defendants illegally and deliberately and "intentionally" installed camera(s) in Plaintiff's apartment, (either before she occupied the apartment of during her absence while she occupied

the apartment) without her knowledge and or permission and resulting in capturing private conversation and images.

90. This intrusion was "highly offensive, embarrassing, and humiliating, and fearful to the Plaintiff.

91. Plaintiff expected to have complete and exclusive and reasonable expectation of privacy but she was denied in the final analysis.

92. "'[E]lectronic communication' means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photo electronic or photo optical system that affects interstate or foreign commerce, but does not include—(A) the radio portion of a cordless telephone communication that is transmitted between the cordless handset and the base unit; (B) any wire or oral communication; (C) any communication made through a tone-only paging device; or (D) any communication from a tracking device (as defined in section 3117 of this title)," 18 U.S.C. 2510(12).

93. Plaintiff knows for sure that images of her nude body was transfer through the camera(s) to remote site(s) to unwarranted observers; creating emotional distress, intimidation stress, fear, and embarrassment, but most important, is that these images may someday displayed on the Internet or other social media.

94. Plaintiff had a reasonable expectation of privacy while she in her apartment as a tenant at the Park.

WHEREFORE, Plaintiff, Dr. Beverley Harris, demands judgment be entered against The Bozzuto Group for money damages, punitive damages, costs of suit, pre-judgment interest, and such other relief as this Court may deem just and appropriate.

### Bozzuto - COUNT V

Violation of 28 U.S.C. § 2511 & Invasion of Privacy by The Bozzuto Group/The Park:

95. Invasion of privacy. New Jersey recognizes all four common law invasion of privacy claims: intrusion upon solitude or seclusion, public disclosure of private facts (e.g., unreasonable publicity given to one's private life), false light privacy (e.g., publicity that normally places the other in a false light before the public), and appropriation of one's name or likeness (*Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689 (App. Div. 1982)).

**THE UNITED STATES DISTRICT COURT OF NEW JERSEY**           **June 18, 2018**

The Bozzuto Group & The Parks Apartments:

96. Paragraphs 1 through 51 are realleged as though fully set forth herein:

97. Defendants illegally and deliberately and "intentionally" conducted background check on Plaintiff without her knowledge and permission.

98. Defendant at no time during the more than 2 months of contact with Plaintiff regarding renting the apartment, mentioned anything about requiring a background check in order be accepted as a tenant.

99. Plaintiff learned about the background, accidently, when she approached the Property Manager about possibly having her keys changed.

100. Plaintiff was completely shock about this privacy violation and kindly requested a copy of the background check, but Defendant denied the request stating that Plaintiff should obtain such information from the Agency that had completed the check on behalf of Defendant.

101. This intrusion was "highly offensive, emotional for Plaintiff.

## FBI - COUNT VI

Violation of 28 U.S.C. § 2511 & Invasion of Privacy by The FB:

102. Invasion of privacy. New Jersey recognizes all four common law invasion of privacy claims: intrusion upon solitude or seclusion, public disclosure of private facts (e.g., unreasonable publicity given to one's private life), false light privacy (e.g., publicity that normally places the other in a false light before the public), and appropriation of one's name or likeness (*Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689 (App. Div. 1982)).

103. The FBI had violated Plaintiff's Privacy when they decided to invade her file while in the custody of the Court.

## FBI - COUNT VII

104. Tampering with Government Official Document, violation of Plaintiff's Rights:

The FBI, apparently made changes to Plaintiff's court document while it was in the possession of a Federal Agency.

## FBI - COUNT VIII

105. Violation of Plaintiff's First Amendment Rights by trying to stop her from expressing her Rights to free speech when she filed her lawsuit against the Bozzuto Group and other Defendants.

**THE UNITED STATES DISTRICT COURT OF NEW JERSEY**         **June 18, 2018**

## FBI – COUNT IX

106. Abuse of Power and Intimidation against Plaintiff, a Violation her Civil Rights.

WHEREFORE, Plaintiff, Dr. Beverley Harris, respectfully, requests The Court:

A. Issue a declaratory judgement that defendants' conduct as described above violated Plaintiff's constitutional rights, the Privacy Act, and State and common laws;

B. Issue a permanent injunction prohibiting Defendants from further violations of Plaintiff's constitutional rights, the Privacy Act, and State and common laws;

C. Award reasonable and appropriate compensatory damages to Plaintiff, in an amount to be ascertain at trial, for Dependents' unlawful acts described above;

D. Award exemplary and punitive damages to Plaintiff, in an amount to be ascertain at trial, to deter similar unlawful acts in the future;

E. Award Plaintiff's cost, expenses, and reasonable attorneys' fees (if attorneys are assigned by the Court; and

F. Award such other and further relief as this Court deems necessary and proper

DATED:  18 June 2018                                  Respectfully,

                                                      By: _____
                                                      Dr. Beverley M. Harris
                                                      610 Greenway Blvd
                                                      Roselle, NJ 07203
                                                      Phone: (973) 876-0933