# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

Chambers of
**STEVEN C. MANNION**
United States Magistrate Judge

Martin Luther King Jr, Federal Bldg.
& U.S. Courthouse
50 Walnut Street
Newark, NJ 07102
(973) 645-3827

February 21, 2019

### LETTER OPINION-ORDER

Re:  D.E. 54, 55, Motions For *Pro Bono* Counsel
Harris v. The Bozzuto Group, et al.
Civil Action No. 18-cv-10277-MCA-SCM

Dear Litigants:

Before the Court are Plaintiff, Beverly Harris' ("Ms. Harris") Motions for *Pro Bono* Counsel.[1] The Court has reviewed Ms. Harris' Motions, and for the reasons set forth herein, they are **DENIED**.

## I. MAGISTRATE JUDGE AUTHORITY

Magistrate judges are authorized to decide any non-dispositive motion designated by the Court.[2] This District specifies that magistrate judges may determine all non-dispositive pre-trial

---

[1] (ECF Docket Entry ("D.E.") 54,55, Pls.' Mot. For *Pro Bono* Counsel). Unless otherwise indicated, the Court will refer to documents by their docket entry number and the page number assigned by the Electronic Case Filing System.

[2] 28 U.S.C. § 636(b)(1)(A).

motions, including motions for *pro bono* counsel.[3] Decisions by magistrate judges must be upheld unless "clearly erroneous or contrary to law."[4]

## II. DISCUSSION AND ANALYSIS

District courts are granted broad discretion to appoint attorneys to represent indigent civil litigants,[5] but civil litigants possess neither a constitutional nor a statutory right to appointed counsel.[6] Moreover, though Congress has empowered district courts to "request" counsel for civil litigants, courts cannot "require" an unwilling attorney to serve as counsel.[7] This Court must, therefore, "take note of the significant practical restraints on the district courts' ability to appoint counsel; . . . the lack of funding to pay appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation."[8]

When evaluating a request for the appointment of *pro bono* counsel, a district court should first determine whether the plaintiff's claim "has arguable merit in fact and law."[9] The Third

---

[3] L. CIV. R. 72.1(a)(1); *See, e.g., Tormasi v. Hayman*, No. CV 08-4950, 2010 WL 11531088, at *2 (D.N.J. Sept. 14, 2010) (decision of magistrate judge on motion to appoint *pro bono* counsel affirmed).

[4] § 636(b)(1)(A).

[5] 28 U.S.C. § 1915 (d), (e)(1).

[6] *See Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002) (citing *Parham v. Johnson*, 126 F.3d 454, 456-67 (3d Cir. 1997)).

[7] *Id.* (citing 28 U.S.C. § 1915 (e)(1)); *See also Christy v. Robinson*, 216 F. Supp. 2d 398, 406 n. 16 (D.N.J. 2002) (citing *Mallard v. United States Dist. Court for Southern Dist. of Iowa*, 490 U.S. 296, 301-02 (1989)).

[8] *See Tabron v. Grace*, 6 F.3d 147, 157 (3d Cir. 1993).

[9] *Id.* at 155.

2

Circuit has articulated an analytical framework that district courts must use in exercising their discretion.[10] The analysis begins with a threshold assessment of the merits of the case.[11]

If the court first finds "some arguable merit in fact and law," then it must go on to weigh a series of considerations known as the *Tabron* post-threshold factors.[12] These factors include: (1) the plaintiff's ability to present his case; (2) the complexity of the legal issues involved; (3) the extent of factual discovery and the plaintiff's ability to investigate and to comply with complex discovery rules; (4) the extent to which the case may turn on credibility determinations; (5) whether expert testimony will be required; and (6) whether the plaintiff can afford counsel on his or her own behalf.[13]

The Court assumes solely for the purpose of this Application that Ms. Harris' case has "some arguable merit in fact and law."[14] The Court need not undertake a detailed analysis of this point because application of the *Tabron* post-threshold factors weighs against appointment of *pro bono* counsel at this time.

1. Ms. Harris' Ability to Present Her Case

The first factor has been identified as "perhaps the most significant."[15] For this factor, the Court considers Ms. Harris' "education, literacy, prior work experience, and prior litigation

---

[10] *See Montgomery v. Pinchak*, 294 F.3d 492 (3d Cir. 2002); *Parham v. Johnson*, 126 F.3d 454 (3d Cir. 1997); *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993).

[11] *See Montgomery*, 294 F.3d at 498-99 (citing *Tabron*, 6 F.3d at 155; *Parham*, 126 F.3d at 457).

[12] *Id.* at 499.

[13] *See Tabron*, 6 F.3d at 156; *See also Parham*, 126 F.3d at 461.

[14] *See Montgomery*, 294 F.3d at 499.

[15] *Id.* at 501.

3

experience...."[16] As additional guidance, the Third Circuit has noted that courts should consider Ms. Harris' ability to present her case "[i]n conjunction with . . . the difficulty of the particular legal issues."[17]

Ms. Harris contends that she requires *pro bono* counsel "for advisory assistance ... [concerning] the Fed[eral] Rules[,] ... Local Requirements[,] ... required documents[,] and deadlines."[18] Ms. Harris' lack of formal legal training alone, however, does not constitute sufficient grounds to warrant the appointment of counsel.[19] Ms. Harris' level of education is not entirely clear from her submissions to the Court, but she does refer to herself as "Dr." in those submissions, implying that she may have some form of higher education.[20] Additionally, she seems to have already appeared as a *pro se* litigant (in a case before the United States District Court for the Southern District of New York).[21]

Furthermore, Ms. Harris' filings with the Court thus far reflect literacy and a general understanding of the litigation process. For example, without the aid of counsel, Ms. Harris has already drafted and amended her complaint,[22] responded to Defendants', Thomas Bozzuto, Toby

---

[16] *Id.* (citations omitted) (citing *Tabron*, 6 F.3d at 156).

[17] *See Tabron*, 6 F.3d at 156; *See also Montgomery*, 294 F.3d at 502.

[18] (D.E. 55, Pls.' Am. Mot. For *Pro Bono* Counsel at 2).

[19] *See, e.g.*, *Hooks v. Schultz*, No. 07-5627, 2010 WL 415316, at *1 n.2 (D.N.J. Jan. 29, 2010) (noting that a formal lack of legal training alone does is not sufficient grounds for the appointment of counsel as "it is a limitation held in common by most *pro se* parties") (citations (omitted).

[20] (D.E. 55, Pls.' Am. Mot. For *Pro Bono* Counsel at 2).

[21] (D.E. 26-3, Defs.' Mot. to Dismiss at 4).

[22] (D.E. 15, Second Am. Compl.).

4

Bozzuto, David Curcio, Michelle Demetriou, and the Bozzuto Group ("Defendants"), Motion to Dismiss,[23] and filed various motions, including this one to appoint pro bono counsel.[24] Therefore, the first *Tabron* factor weighs against appointment.

   2. The Legal Complexity of the Case

The second *Tabron* factor concerns the complexity of the particular legal issues. To assess the complexity of legal issues for the purpose of appointing counsel, "courts must ... look to the proof going towards the ultimate issue and the discovery issues involved."[25] The Third Circuit has stated that "where the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis."[26]

Ms. Harris has pled negligence, violations of 28 U.S.C. § 2511, defamation, first amendment violations, and other potential civil rights violations.[27] At the present time, the Court does not find the legal issues in this action to be particularly complex. Ms. Harris seems to agree (she notes in her "Amended" Motion For *Pro Bono* counsel that even were counsel to be appointed, she expects "to remain in full control" of her substantive legal claims).[28] Therefore, the second *Tabron* factor weighs against appointment.

---

[23] (D.E. 33, Pl.'s Resp.).

[24] (D.E. 55, Pls.' Am. Mot. For *Pro Bono* Counsel).

[25] *See Parham*, 126 F.3d at 459.

[26] *See Tabron*, 6 F.3d at 156.

[27] (D.E. 15, Second Am. Compl. at 10-15).

[28] (D.E. 55, Pls.' Am. Mot. For *Pro Bono* Counsel at 3).

### 3. The Degree to Which Factual Investigation Will be Necessary

The third *Tabron* factor is the degree to which factual investigation will be necessary and Ms. Harris' ability to pursue an investigation. Generally, courts give weight to an incarcerated individual whose confinement limits her ability to conduct discovery and investigate facts.[29] In this case, such a situation does not exist. Additionally, nothing in the record indicates that Ms. Harris' *pro se* status inhibits her from conducting discovery and reaching her witnesses. Ms. Harris has been intimately involved with the events surrounding and leading up to the filing of the complaint, indicating that she is capable of undertaking the necessary factual investigation. Therefore, the third *Tabron* factor weighs against appointment.

### 4. The Extent to Which the Case is Likely to Turn on Credibility Determinations

The fourth *Tabron* factor is the extent to which the case is likely to turn on credibility determinations. Because "it is difficult to imagine a case that does not" rely, in some measure, on witness credibility, courts look to whether the case at hand will become "solely a swearing contest."[30] Based on the initial pleadings, this matter does not appear to hinge on credibility determinations. Furthermore, because, overall, the factors weigh against appointment, it is unnecessary to further evaluate the potential credibility issues.

### 5. Whether the Case Will Require Testimony from Expert Witnesses

The fifth *Tabron* factor is whether the case will require testimony from expert witnesses. At this juncture of the case, it is not entirely clear whether expert testimony will be necessary.

---

[29] *See Tabron*, 6 F.3d at 156.

[30] *See Parham*, 126 F.3d at 460.

However, expert testimony is often used to support claims of negligence and defamation, both of which were pled by Ms. Harris in this case.[31] Therefore, the fifth *Tabron* factor weighs in favor of appointment.

### 6. Ms. Harris' Capacity to Retain Counsel on Her Own Behalf

Finally, the sixth *Tabron* factor is Ms. Harris' capacity to retain counsel on her own behalf. The Court acknowledges Ms. Harris' assertions that she has attempted and failed to retain counsel.[32] However, these facts alone are not enough to justify an order of appointment. Furthermore, in her "Amended" Motion For *Pro Bono* Counsel, Ms. Harris does not argue that she is unable to afford an attorney; she notes only that none "seem to be interested in taking the case."[33] Therefore, the sixth *Tabron* factor weighs against appointment.

The Court is, as always, sympathetic to the disadvantages of the parties that come before it. Accordingly, the Court will closely monitor the considerations raised by Ms. Harris' Motions for *Pro Bono* Counsel throughout case management and, as the case moves forward, it may exercise its discretion to appoint counsel *sua sponte* should any of the above discussed considerations change.[34]

Because the *Tabron* factors weigh against appointment at this time, Ms. Harris' Motions for *Pro Bono* Counsel are **DENIED WITHOUT PREJUDICE**. Ms. Harris may petition the Court

---

[31] (D.E. 15, Second Am. Compl. at 10-12, 15).

[32] (D.E. 55, Pls.' Am. Mot. For *Pro Bono* Counsel at 3).

[33] *Id.*

[34] *See Tabron*, 6 F.3d at 156; *Christy*, 216 F. Supp. 2d at 406.

for appointment of *pro bono* counsel again if her case survives dispositive motion practice, advances to trial, or if other circumstances warrant such a need in the future.

**IT SO ORDERED.**

Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

2/21/2019 2:41:27 PM

Original: Clerk of the Court
Hon. Madeline Cox Arleo, U.S.D.J.
cc: All parties